**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — EASTERN DIVISION**

| | |
|---|---|
| MARIA SANTOS LAGUNAS MARTINEZ, | Case No. EDCV 26-2090-AS |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| THOMAS GILES, et al., | |
| Respondents. | |

**INTRODUCTION**

On April 24, 2026, Maria Santos Lagunas Martinez ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that she has been detained since February 18, 2026, without an opportunity for release on bond, in violation of her Fifth Amendment due process rights. (Dkt. No. 1). On May 1, 2026, Respondents filed a very brief Response to the Petition, stating that Petitioner appears to

merit a bond hearing as a member of the "Bond Eligible Class" certified in Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025) ("Bautista"), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), appeal filed, 9th Cir. Case Nos. 25-7958, 26-1044.

For the reasons stated below, the Petition is GRANTED; Respondents are ORDERED to release Petitioner immediately from custody without the imposition of any restraints on her liberty, such as reporting requirements, GPS, or electronic monitoring; and they are further ENJOINED and RESTRAINED from re-detaining Petitioner without providing her with a prompt bond hearing before a neutral decisionmaker under 8 U.S.C. § 1226(a).[1]

**BACKGROUND[2]**

Petitioner, a native and citizen of Mexico, is fifty-five years old with no criminal history. (Petition ¶¶ 10, 23). She poses no danger to the community and has strong family ties, including three children who are United States citizens. (Id. ¶ 24). She also has a stable residence available upon release and a verified sponsor willing to ensure compliance with all court and ICE requirements. (Id. ¶ 25). She was arrested by ICE on February 18, 2026, and has been detained since then at the Adelanto ICE

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3, 4, 8).

[2] The facts set forth here are based on the Petition's allegations, which Respondents have not disputed.

2

Processing Center without having received any bond hearing at which a neutral immigration judge evaluated her custody. (Id. ¶¶ 2, 10, 17, 21, 28, 31). Her immigration removal proceedings remain pending. (See id. ¶ 19).

## DISCUSSION

As noted above, Respondents acknowledge that Petitioner is entitled to a bond hearing under Bautista, in which this Court held on December 18, 2025, that noncitizens who entered the United States without inspection and have since resided within the United States are subject to detention under 8 U.S.C. § 1226(a), not § 1225(b)(2), and are therefore entitled to prompt bond hearings. See Bautista, 813 F. Supp. 3d at 1101-06. Bautista vacated the government's recent policy to the contrary and entered a declaratory judgment accordingly as to a class of noncitizens, the "Bond Eligible Class," declaring essentially that these class members are entitled to bond hearings under § 1226(a).[3] See

[3] Bautista is by no means unique in reaching that conclusion. Indeed, the vast majority of courts across the country — analyzing the text, structure, agency application, and legislative history of 8 U.S.C. § 1225 and § 1226 — have found that § 1225(b) does not apply to individuals, like Petitioner, who were arrested in the interior of the United States after having already been present in the United States for some time. See, e.g., Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); Cunha v. Freden, -- F.4th --, 2026 WL 1146044, at *3-23 (2d Cir. Apr. 28, 2026); Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *7-12 (N.D. Cal. Sept. 12, 2025); Garcia v. Noem, 803 F. Supp. 3d 1064, 1075-77 (S.D. Cal. 2025); Rosado v. Figueroa, 2025 WL 2337099, at *6-11 (D. Ariz. Aug. 11, 2025); Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1255-61 (W.D. Wash. 2025); Hasan v. Crawford, 800 F. Supp. 3d 641, 651-57 (E.D. Va. 2025); Velasquez Salazar v. Dedos, 806 F. Supp. 3d 1231, 1240 (D.N.M. 2025); Garcia Cortes v. Noem, 2025 WL 2652880, at *2-3 (D. Colo. Sept. 16, 2025); Pizarro

Bautista, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Relatedly, on February 18, 2026, the Baustista Court vacated a September 2025 Board of Appeals ("BIA") opinion, In re Yajure Hurtado, 29 I & N Dec. 216 (BIA 2025), which had endorsed the government's mandatory-detention policy by holding that immigration judges lacked authority to hear bond requests or to grant bond to noncitizens who are present in the United States without admission. See Bautista, -- F. Supp. 3d --, 2026 WL 468284, at *9-10.

The government appealed the Court's decisions in Bautista, and the matter remains pending in the Ninth Circuit. On March 6, 2026, the Ninth Circuit, pending resolution of the government's motion to stay, granted a temporary administrative stay of the district court's declaratory judgment of December 18, 2025, only to the extent that the judgment extended beyond this District, but the judgment remained in place as to this District. See 9th Cir. Case No. 26-1044, Dkt. No. 5. The court also administratively stayed the district court's order of February 18, 2026, which had granted the petitioners' motion to enforce the judgment and vacated Yajure Hurtado. Id. On March 31, 2026, the Ninth Circuit granted the motion for stay pending appeal of the district court's February 18 order vacating Yajure Hurtado and the December 18 class

Reyes v. Raycraft, 2025 WL 2609425, at *4-8 (E.D. Mich. Sept. 9, 2024); Leal-Hernandez v. Noem, 803 F. Supp. 3d 409, 421–23 (D. Md. 2025); Romero v. Hyde, 795 F. Supp. 3d 271, 280-88 (D. Mass. 2025). But see Avila v. Bondi, 170 F.4th 1128, 1133 (8th Cir. 2026); Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502 (5th Cir. 2026).

4

certification order and final judgment, to the extent the latter orders extended beyond this District. Id., Dkt. No. 17.

However, as Respondents acknowledge here, the district court's declaratory judgment in Bautista still remains in force in this District. (See Response at 2; 9th Cir. Case No. 26-1044, Dkt. No. 17). As such, that declaratory judgment has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201; see also Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("[T]he point of a declaratory judgment 'is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata.'" (citation omitted)); Badger Catholic, Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010) ("[A] declaratory judgment is a real judgment, not just a bit of friendly advice."). Respondents thus "are legally obligated to comply" with it. Gonzalez Procopio v. Mullin, 2026 WL 1045658, at *3 (C.D. Cal. Apr. 13, 2026); see also Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. U.S. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

Yet, despite conceding here that Petitioner is entitled to a bond hearing under Bautista, Respondents have failed to provide one since detaining her about eighty days ago, on February 18, 2026, and they offer no reason for this clear violation of the Bautista judgment. This is unsurprising. It appears that

immigration judges frequently have failed to comply with the Bautista judgment in this District, and have instead continued to rely on 8 U.S.C. § 1225(b)(2) and Yajure Hurtado to deny bond – which has prompted this Court to conclude in several other cases that ordering a bond hearing would be futile and release is warranted. See, e.g., Garcia Aguilar v. Mullin, 2026 WL 1196090, at *4 (C.D. Cal. Apr. 28, 2026); Sanchez Hernandez v. Mullin, 2026 WL 1196341, at *3-4 (C.D. Cal. Apr. 28, 2026); Herrera Castro v. Johnson, 2026 WL 1104766, at *3-4 (C.D. Cal. Apr. 17, 2026); Gonzalez Procopio v. Mullin, 2026 WL 1045658, at *3 (C.D. Cal. Apr. 13, 2026); Kun v. Janecka, 2026 WL 931541, at *5 (C.D. Cal. Apr. 3, 2026).

Here, as well, ordering a bond hearing, nearly three months after one should have been provided, would likely be futile. But more to the point, particularly as Respondents have identified no fact to justify Petitioner's continued detention and have not opposed the merits of her Petition, due process entitles her to be released.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles

[noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

"The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest." (citing Young v. Harper, 520 U.S. 143, 150 (1997); Ortega-Rangel v. Sessions, 313 F. Supp. 3d 993, 1001 (N.D. Cal. 2018))).

To determine what process is due, courts consider the following three factors from Mathews v. Eldridge, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Here, as to the first factor, Petitioner has strong family ties, including three children who are United States citizens. (Petition ¶ 24). Her private interest in remaining out of custody is substantial. See, e.g., Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (petitioner had substantial private interest "in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church"); Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life"); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (petitioner had substantial private interest in remaining on bond, as he was "living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community").

8

As to the second factor, the risk of erroneous deprivation of liberty is undoubtedly high where, as here, Petitioner has been detained for an extended period without any hearing to assess whether detention is justified. See, e.g., Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("'[T]he risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.' Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (citing Zadvydas, 533 U.S. at 690; Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025))).

Third, Respondents have identified no significant government interest in denying a prompt bond hearing and continuing to detain Petitioner – who has no criminal history and poses no apparent danger to the community, and who further asserts that she "has a stable residence available upon release and a verified sponsor willing to ensure compliance with all court and ICE requirements." (Petition ¶¶ 23-25).

Accordingly, consideration of the Mathews factors leads to the conclusion that due process entitles Petitioner to immediate release from detention. Furthermore, prior to any re-detention, Petitioner must be provided with a prompt bond hearing before an immigration judge at which the government bears the burden to prove by clear and convincing evidence that Petitioner is a flight risk

or a danger to the community. See Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (where substantial liberty interests are at stake, government must prove by clear and convincing evidence that noncitizen is a flight risk or a danger to the community to justify denial of bond), abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018); Melchor-Melchor v. Noem, 2026 WL 760058, at *1-3 (C.D. Cal. Mar. 16, 2026) (petitioner detained under § 1226(a) was entitled to bond hearing before immigration judge where the government had burden to prove dangerousness or flight risk by clear and convincing evidence); Gutierrez v. Semaia, 2026 WL 916773, *5 n.3 (C.D. Cal. Mar. 27, 2026) (same); Duong v. Kaiser, 800 F. Supp. 3d 1030, 1042 (N.D. Cal. 2025) ("[T]he Ninth Circuit has repeatedly held that due process requires the government to prove by clear and convincing evidence that a noncitizen facing detention is a flight risk or danger to the community." (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022))); see also Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("At the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community.").

**ORDER**

Accordingly, the Court GRANTS the Petition; ORDERS Respondents to release Petitioner immediately from immigration detention without the imposition of any restraints on her liberty, such as reporting requirements, GPS, or electronic monitoring; and ENJOINS

10

and RESTRAINS Respondents from re-detaining Petitioner without providing her with a prompt bond hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 8, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

11